UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLISSON J. JOHNSON,

    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Civil Action No. 18-CV-13726

HON. BERNARD A. FRIEDMAN

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER PROCEEDINGS

This matter is presently before the Court on cross motions for summary judgment [docket entries 11 and 13]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing. For the reasons stated below, the Court shall grant plaintiff's motion, deny defendant's motion, and remand the case for further proceedings.

Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's decision denying his application for supplemental security income benefits. An Administrative Law Judge ("ALJ") held a hearing in February 2018 (Tr. 37-50) and issued a decision denying benefits in March 2018 (Tr. 12-30). This became defendant's final decision in October 2018 when the Appeals Council denied plaintiff's request for review (Tr. 1-3).

Under § 405(g), the issue before the Court is whether the ALJ's decision is supported by substantial evidence. As the Sixth Circuit has explained, the Court

> must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard. *White*, 572 F.3d at 281 (citing 42 U.S.C. § 405(g)); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th

> Cir. 2003); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th
> Cir. 1997). Substantial evidence is "such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion."
> *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d
> 842 (1971) (internal quotation marks omitted); see also *Kyle*, 609
> F.3d at 854 (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601,
> 604 (6th Cir. 2009)). Where the Commissioner's decision is
> supported by substantial evidence, it must be upheld even if the
> record might support a contrary conclusion. *Smith v. Sec'y of Health
> & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). However, a
> substantiality of evidence evaluation does not permit a selective
> reading of the record. "Substantiality of the evidence must be based
> upon the record taken as a whole. Substantial evidence is not simply
> some evidence, or even a great deal of evidence. Rather, the
> substantiality of evidence must take into account whatever in the
> record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d
> 383, 388 (6th Cir. 1984) (internal citations and quotation marks
> omitted).

*Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 640-41 (6th Cir. 2013).

At the time of the ALJ's decision, plaintiff was forty-four years old (Tr. 29). He has a general education diploma and no relevant work experience (Tr. 40, 48, 207-08). Plaintiff claims he has been disabled since February 2016 (Tr. 201) due to depression, anxiety, migraines, gout, hypertension, back pain, high cholesterol, carpal tunnel syndrome, sleep apnea, and gastroesophageal reflux disease ("GERD") (Tr. 206). At the hearing plaintiff testified that he also suffers from numbness in his arms, legs, and feet; edema in his feet; pain throughout his body; a slipped disc in his neck; and medication side effects (Tr. 41, 46).

The ALJ found that plaintiff's severe impairments are "degenerative disc disease and carpal tunnel syndrome" (Tr. 18) and that his non-severe impairments are hypertension, obstructive sleep apnea, type II diabetes mellitus, obesity, and anxiety (Tr. 18-19). The ALJ made no findings regarding plaintiff's other impairments, i.e., depression, migraines, gout, and GERD. The ALJ further found that plaintiff has the residual functional capacity ("RFC") to perform a limited range

2

of sedentary work.[1]  A vocational expert ("VE") testified in response to a hypothetical question that a person of plaintiff's age and education and who has this RFC could perform certain unskilled jobs as a packer, bench assembler, or information clerk (Tr. 48-49).  The ALJ cited this testimony as evidence that work exists in significant numbers that plaintiff could perform and determined that he is not disabled (Tr. 30).

Having reviewed the administrative record and the parties' briefs, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence because his RFC evaluation of plaintiff is flawed.  Since the hypothetical question incorporated this flawed RFC evaluation, it failed to describe plaintiff in all relevant respects and the VE's testimony given in response thereto cannot be used to carry defendant's burden to prove the existence of a significant number of jobs plaintiff is capable of performing.

Plaintiff's RFC evaluation is flawed for four reasons.  First, the ALJ failed to consider the side effects of plaintiff's medications.  The record indicates that plaintiff takes, or at various times has taken, a number of medications, including Baclofen, Chlorthalidone, Clonidine, Furosemide (Lasix), Gabapentin (Nerontin), Isosorbide (Imdur), Methocarbamol (Robaxin),

---

[1] 20 C.F.R. § 416.967(a) defines sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

The ALJ found that plaintiff can perform sedentary work "except he can occasionally climb ramps and stairs.  He must avoid concentrated exposure to unprotected heights [sic] and he must avoid concentrated exposure to vibration [sic]" (Tr. 22).

3

Nifedipine, Nitrostat (Nitroglycerin), Omeprazole, Prednisone, Simvastatin, Metoprolol, Tramadol (Ultram), Sertraline (Zoloft), Afeditab, Hydrochlorothiazide (Hydrodiuril), Lisinopril, Potassium Chloride (Klor-con), Metronidazole, Butalbital, Acetaminophen-Codeine #3, Hydrocodone-Acetaminophen (Norco), Hydralazine, Clonazepam (Klonopin), and Metformin (Glucophage) (Tr. 209, 222, 258-62, 266-72, 279, 496-98, 501-02, 708-09, 762-63, 908-10, 937-38, 944-47, 979-81, 991-92, 1045), some of which have known side effects. Plaintiff testified that he experiences medication side-effects of "dizziness, drowsiness, blurriness" (Tr. 46) and his occupational therapist indicated that "[p]ain meds make pt drowsy so pt does not leave house" (Tr. 1067).

The ALJ's failure to make any findings as to this issue is an error requiring remand, as the Sixth Circuit has held that the ALJ must evaluate "[t]he type, dosage, effectiveness, and side effects of any medication" as part of the process of determining the extent to which side effects impair a claimant's capacity to work. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi)). Further, hypothetical questions to vocational experts must account for medication side effects. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009). On remand, the ALJ must determine which medications plaintiff was taking during the relevant time period; make findings as to the nature and severity of these medications' side effects, if any; and adjust his RFC evaluation of plaintiff and his hypothetical question(s) to the VE, as appropriate.

Second, the RFC evaluation is flawed because the ALJ neglected to make required findings concerning the effect of plaintiff's obesity on his other impairments. The ALJ found that

4

obesity is one of plaintiff's non-severe impairments[2] (Tr. 19) and that his obesity, hypertension, apnea, and diabetes "have been managed medically and do not appear to have caused any significant limitations to his ability to perform basic work activities" (Tr. 19). This statement fails to comply with the regulations requiring ALJs to consider the effects of a claimant's obesity at all steps of the sequential evaluation process. *See* SSR 02-1p; 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00Q ("[w]hen determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity."). It does not suffice for the ALJ simply to assert that plaintiff's obesity, and several of his other impairments, are "managed medically" and do not affect his ability to work. On remand, the ALJ must comply with the regulations and make findings as to the effect of plaintiff's obesity on his other impairments. In particular, the ALJ must determine the extent to which plaintiff's obesity exacerbates his back pain and diminishes his ability to sit, stand, or walk. The ALJ must include any such findings in reevaluating plaintiff's RFC and, as appropriate, in framing revised hypothetical question(s) to the VE.

Third, the RFC evaluation in this matter is flawed because it fails to make any allowance for plaintiff's reduced ability to use his hands and fingers due to his carpal tunnel syndrome ("CTS"). As noted above, the ALJ found that plaintiff's CTS is one of his severe impairments, a finding plainly supported by the medical evidence. A neurologist noted in

---

[2] Under defendant's regulations, a person with a body-mass index ("BMI") of 30 or higher is considered to be obese, and a person with a BMI of 40 or higher is considered to be extremely so. *See* SSR 02-1p. The ALJ found that plaintiff's BMI has been as high as 36.8 (Tr. 19). In fact, the record contains a number of entries showing that plaintiff's BMI has been as high as 37.13, a level his physician rated as "[m]orbid obesity" (Tr. 991, 995, 1047-48).

September 2015 that "[t]here is electrodiagnostic evidence of bilateral median dysfunction at the wrist, carpal tunnel syndrome, sensory, demyelinating and axonal and moderate" and that "[t]rigger point injection over the median nerves bilaterally was done for the patient's carpal tunnel syndrome" (Tr. 402-03). Plaintiff has complained repeatedly about numbness, tingling, pain, and weakness in both of his hands (Tr. 404, 422, 743, 762, 804-94, 1025-34), and he told his primary care physician that the injections did not help much (Tr. 489, 495). There is evidence plaintiff wears bilateral carpal tunnel braces, which were prescribed by his neurologist (Tr. 762, 909, 928, 1025, 1029). Despite this evidence, and despite finding that plaintiff's CTS is a severe impairment, the ALJ made no findings regarding the severity of the symptoms plaintiff experiences in his fingers, hands, and wrists. On remand, the ALJ must reevaluate all of the evidence regarding plaintiff's CTS, make findings regarding the severity of plaintiff's CTS symptoms (particularly the pain and numbness in plaintiff's hands and wrists), and revise his RFC evaluation and his hypothetical question(s) to the VE, as appropriate.

Fourth, the RFC evaluation in this matter is flawed because the ALJ failed to explain adequately why he found that plaintiff is able to sit throughout an eight-hour work day. As noted above, the ALJ found that plaintiff's degenerative disc disease is a severe impairment. This finding is plainly supported by the medical evidence. An EMG of plaintiff's lumbar spine in August 2015 showed "[l]umbo-sacral paraspinal denervation with radiculopathy right>>left in L5>>>>S1 root distribution sub acute to chronic in nature with ongoing denervation moderate to severe in severity probably from disc-DJD/disc osteophytes" (Tr. 696). An MRI of plaintiff's lumbar spine in February 2016 showed "small central disc protrusions at L4-L5 and L5-S1 with minor central canal narrowing at L4-L5 demonstrating midline annular tear" and "early degenerative facet arthropathy

6

at L5-S1" (Tr. 505). In April 2016, Dr. James Culver, M.D., indicated that plaintiff "was evaluated . . . in regard to disc protrusions at L5-S1 greater than L4-5, with sciatica, S1 and L5 radiculitis, and stenosis of L4-5" (Tr. 698-700). In June 2016, x-rays noted "[d]ecreased disc space was found at: L5 and sacrum" and compression fractures at C3, C4, C5, C6, and C7 (Tr. 712). In June-August 2016, plaintiff's chiropractor, Dr. Jason Clift, noted areas of spasm and tenderness, and a severely reduced range of motion, throughout plaintiff's cervical, thoracic, and lumbar spine (Tr. 800, 805, 809, 813, 819, 826, 834, 841, 848, 855, 862, 866, 871-72, 876, 881, 886, 891, 896). In June 2017, Dr. Culver noted:

> There is tenderness of the lumbar spinal midline, especially at L5-S1 and to a lesser extent at L4-5. There is also tenderness of the sciatic notches, left worse than right. Straight-leg-raising testing is positive, with a positive Laseque's sign bilaterally, with symptoms following an S1 distribution.
>
> Mr. Johnson continues to experience signs and symptoms of S1 radiculitis with bilateral sciatica. There are disc protrusions of both L4-5 and L5-S1, as well as mild stenosis of L4-5. Based on his signs, symptoms, diagnostic studies, and lack of adequate relief with physical therapy and medical management, caudal epidural steroid injections are medically indicated and Mr. Johnson is anxious to proceed.

(Tr. 1107).

Plaintiff testified that he can sit for twenty minutes before having "to move my legs" (Tr. 45). He told Dr. Culver that sitting increases his pain (Tr. 1133). Another of plaintiff's treating physicians, Dr. Nazem Abdelfattah, M.D., after noting diagnoses of cervical radiculopathy and chronic low back pain, opined in October 2016 that plaintiff must "[a]void long periods of sitting/standing" (Tr. 753). Additionally, Dr. Abdelfattah has prescribed plaintiff a back brace (Tr. 914, 937, 984, 1001, 1080).

7

The ALJ has not sufficiently explained why, despite this evidence, he concluded that plaintiff can "perform sedentary work . . . except he can [only] occasionally climb ramps and stairs" (Tr. 22). The ALJ noted Dr. Abdelfattah's opinion that plaintiff must "avoid long periods of standing and sitting" and asserted, without explanation, that he "has accommodated this opinion by limiting the claimant to sedentary work" (Tr. 27). Since Dr. Abdelfattah has proscribed both standing *and sitting* for long periods, the ALJ's finding that plaintiff can do sedentary work (i.e., that he can sit for the majority of an eight-hour work day) appears to contradict, not accommodate, this treating physician's opinion. On remand, the ALJ must reevaluate all of the evidence regarding plaintiff's degenerative disc disease ("DDD"); make findings regarding the severity of plaintiff's DDD symptoms (particularly the pain in his back and legs) and the extent to which these symptoms reduce plaintiff's ability sit, stand, and walk; and revise his RFC evaluation and his hypothetical question(s) to the VE, as appropriate.

For the reasons stated above, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence. Remanding the matter for an award of benefits would not be appropriate at this time because the record, in its current state, is not such that "proof of disability is overwhelming or . . . proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Rather, the matter must be remanded so that the record may be further developed to address the deficiencies noted above. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted and this matter is remanded to defendant for further proceedings as required above. This is a sentence four remand under § 405(g).

|  |  |
|---|---|
| Dated: June 10, 2019<br>　　Detroit, Michigan | s/Bernard A. Friedman<br>BERNARD A. FRIEDMAN<br>SENIOR UNITED STATES DISTRICT JUDGE |